UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| United States of America,<br><br>      Plaintiff<br><br>v.<br><br>Harrison Johnson,<br><br>      Defendant | Case No.: 2:12-cr-00336-JAD-CWH<br><br>**Order Denying Motion for<br>Compassionate Release**<br><br>[ECF Nos. 56, 59, 62] |

Defendant Harrison Johnson has served roughly 59 months of his 113-month federal prison sentence for attempted Hobbs Act robbery and brandishing a firearm.[1] He now moves for compassionate release, arguing that his health conditions put him at greater risk of complications should the COVID-19 virus infiltrate USP Beaumont where he is serving his sentence.[2] Though I am deeply sympathetic to Johnson's situation, I deny his motion because he has not exhausted the Bureau of Prisons' (BOP) process for seeking this relief, and the record fails to establish extraordinary and compelling reasons for his early release.

**Background**

Johnson pled guilty to attempted interference with commerce by robbery in violation of 18 U.S.C. § 1951(a) and brandishing a firearm during that crime of violence in violation of 18 U.S.C. § 924(c)(1)(A).[3] He admitted in his written plea agreement that he "robbed the Rainbow Gardens events business" in Las Vegas by pointing a 9 mm handgun at an employee and demanding "give me your money and purse," getting only a receipt—which he mistakenly

---

[1] ECF No. 39 (judgment).

[2] ECF Nos. 56 (motion), 59 (counseled supplement).

[3] ECF No. 28 (plea agreement).

thought was a five-dollar bill—and then ordering her to the ground and to stay there or he'd shoot her.[4]  He was sentenced to 29 months for the robbery count plus 84 months for the firearm offense, for a total of 113 months in custody, followed by five years of supervised release, and he did not appeal from that judgment.  Johnson did, however, file a § 2255 motion in 2016 after the U.S. Supreme Court invalidated the residual sentence-enhancement clause in the Armed Career Criminal Act (ACCA) in *Johnson v. United States*.[5]  Johnson appealed my denial of that motion to the Ninth Circuit, and that appeal remains pending.[6]

Johnson, who was 27 years old at the time of the offense, had an extensive and violent criminal history before this conviction, giving him a criminal history score of 21 and putting him well into the highest criminal history category.  As I summarized at his sentencing hearing:

> In considering all of the § 3553 factors, I particularly considered that Mr. Johnson held a local business owner at gunpoint while attempting to rob her of money.  Although, Mr. Johnson, you were not successful in obtaining any money or property of value, your actions could have easily seriously injured or killed someone.  It was a very dangerous endeavor for you to bring that gun into this business.  You did not know what was waiting for you in there.  And that's a very dangerous prospect.  Initially, with respect to your personal characteristics and history, despite your relative youth, you have an extensive history of committing theft-related offenses.
>
> And I recognize that, as you explained to me that you were—you'd fallen on hard times and that you felt that the circumstances left you with very little opportunity and very little options, you previously served two periods of incarceration in the State of Nevada for such offenses and for escaping from custody and you amassed a large portion of your criminal convictions in a very short period of time.[7]

---

[4] *Id*. at 4.

[5] *Johnson v. United States*, 135 S. Ct. 2551 (2018); ECF No. 42 (§ 2255 motion).

[6] ECF No. 48 (notice of appeal).

[7] ECF No. 54 at 21–22 (transcript of sentencing hearing).

2

Now 35 years old, Johnson is housed at the BOP's U.S. Penitentiary in Beaumont, Texas, and has a projected release date of June 10, 2022.[8]  He claims that he suffers from asthma, obesity, and high blood pressure and asks that his sentence be reduced to time-served or that he be released to home confinement because he cannot socially distance in the facility and is thus at greater risk if the COVID-19 virus infiltrates it.[9]  He acknowledges that he did not exhaust the administrative process before filing this motion and argues that this court should excuse or waive his compliance with that requirement due to the urgencies created by the virus.[10]  The government opposes Johnson's motion, arguing that his failure to comply with the statutory exhaustion requirements is fatal to his request, Johnson has not shown extraordinary and compelling reasons for compassionate release, and his release would endanger the community.[11]

## Discussion

A sentencing court's ability to modify or reduce a sentence once imposed is seriously limited.[12]  The compassionate-release provision of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018,[13] is an exception to this limitation.  It allows the sentencing judge to reduce a sentence based on "extraordinary and compelling reasons" after the defendant has failed to get the BOP to bring such a motion on his behalf.[14]  The court must consider the factors in 18

---

[8] https://www.bop.gov/inmateloc/ (last visited 5/12/2020).  Johnson argues that he will be eligible for release to a halfway house in June 2021.  ECF No. 64 at 1.

[9] ECF Nos. 56, 59.

[10] *Id.*

[11] ECF No. 61.  Johnson replied at ECF No. 64.

[12] *See United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003) (exploring Federal Rules of Criminal Procedure 35 and 36); 18 U.S.C. § 3582(c).

[13] The First Step Act of 2018, § 603(b), Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018).

[14] 18 U.S.C. § 3582(c)(1)(A)(i).

U.S.C. § 3553(a) "to the extent that they are applicable," and any sentence reduction must be "consistent with applicable policy statements issued by the Sentencing Commission."[15]

### A. Johnson's failure to exhaust the administrative process for his release request precludes relief.

The court may entertain an inmate's request for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) only (1) "after [he] has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion" on his behalf or (2) after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."[16] Johnson acknowledges that he has not exhausted this process and argues that this court should dispense with this administrative-exhaustion requirement due to the urgency of this pandemic. In addressing the flood of emergency release motions that the pandemic has prompted, courts are split on the question of whether the exhaustion requirement can be disregarded.[17] After evaluating the growing body of decisions, I side with those who have concluded that the failure to satisfy this requirement is "a glaring roadblock foreclosing compassionate release . . . ."[18]

Section 3582(c) states that "[t]he court *may not* modify a term of imprisonment once it has been imposed," except under specified conditions.[19] For a motion brought under

---

[15] *Id.*

[16] *Id.*

[17] *See, e.g.*, *U.S. v. Otero*, 2020 WL 1912216, *4 (S.D. Cal. Apr. 20, 2020) (collecting cases).

[18] *U.S. v. Raia*, 954 F.3d 594 (3d Cir., Apr. 2, 2020) (holding that failure to comply with § 3582(c)(1)(A)'s exhaustion requirement bars relief).

[19] 18 U.S.C. § 3582(c) (emphasis added).

4

§ 3582(c)(1)(A)(i), those specified conditions include the exhaustion of administrative remedies or the BOP's inaction for 30 days.[20] Thus, the exhaustion requirement is imposed by the express language of the statute itself; it is not judicially created. As the United States Supreme Court explained in *Ross v. Blake*, while "judge-made exhaustion doctrines . . . remain amenable to judge-made exceptions[,] . . . a statutory exhaustion provision stands on different footing. There Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to."[21] Courts may not carve out exceptions that Congress did not provide, even "special circumstances" ones, because "mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion."[22]

Because Congress prescribed no special-circumstances exception to § 3582(c)(1)(A)(i)'s exhaustion requirement, *Ross* dictates that this court lacks the power to create one.[23] Any argument for creating such an exception is further weakened by the fact that this statutory provision is itself a special-circumstances exception to the court's inability to modify a sentence. Plus, it has its own futility exception "baked into its text,"[24] as it permits an inmate to file his motion after 30 days if the warden hasn't acted.[25] Given Congress's decision to mandate exhaustion and specify this singular, express exception, this court cannot apply an additional, unwritten special-circumstances exception to excuse Johnson's failure to exhaust.[26] Because

---

[20] 18 U.S.C. § 3582(c)(1)(A).

[21] *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016).

[22] *Id*. at 1856–58.

[23] *See, e.g.*, *Harris v. Harris*, 935 F.3d 670, 676 (9th Cir. 2019) (noting that statutory language must be construed "strictly and narrowly").

[24] *Ross*, 136 S. Ct. at 1862.

[25] 18 U.S.C. 3582(c)(1)(A).

[26] *See Ross*, 136 S. Ct. at 1856, 1862 (concluding that the Prison Litigation Reform Act's "mandatory language means a court may not excuse a failure to exhaust, even to take [special]

5

Johnson did not exhaust the administrative process before filing this motion, his motion must be denied for failure to exhaust.

### B. The record does not contain extraordinary and compelling reasons for Johnson's early release.

Even if Johnson had properly exhausted the administrative process before filing this motion,[27] I would deny it for the separate and independent reason that the record does not demonstrate that his compassionate release is warranted. Although the statute does not define "extraordinary and compelling circumstances," the U.S. Sentencing Commission has identified four categories of situations that may qualify: serious medical conditions, advanced age, family circumstances, and a catch-all "other reasons."[28] Johnson contends that he falls into the medical-condition category because his asthma, obesity, and high blood pressure put him at greater risk should he contract COVID-19. The Sentencing Commission finds extraordinary and compelling reasons under the medical category when the defendant has a physical, mental, functional, or

---

circumstances into account"). There are also sound policy reasons to require an inmate to present his COVID-19 compassionate-release request first to the BOP. The Attorney General has empowered the BOP to transfer suitable candidates with COVID-19 risk factors to home confinement. https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement_april3.pdf (last visited 5/12/2020). The exhaustion doctrine recognizes "that agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer" and allows the agencies to apply their "special expertise." *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992), *superseded by statute on other grounds.* "Because defendant is in BOP custody, the BOP is in a better position to initially determine [his] medical needs, the specific risk of COVID-19 to [him] and the inmates generally at" his facility, "the risk to the public if [he] is released[,] and whether [his] release plan is adequate." *U.S. v. Read-Forbes*, 2020 WL 1888856, *4 (D. Kan., Apr. 16, 2020). These concerns are particularly salient here because Johnson's asthma is unverified, ECF No. 61 at 24–25, ECF No. 63 (sealed medical records), and USP Beaumont has no reported inmate COVID-19 cases. *See* https:// www.bop.gov/coronavirus/ (last visited 5/12/2020).

[27] And assuming, without deciding, that Johnson's pending appeal does not deprive this court of jurisdiction to resolve this motion.

[28] U.S.S.G. 1B1.13, application note 1(A).

6

cognitive impairment "that substantially diminishes" his ability "to provide self-care within the environment of a correctional facility and from which . . . he is not expected to recover."[29]

Johnson has not demonstrated that his medical situation presents extraordinary and compelling circumstances for compassionate release. His medical records undercut his asthma claim, and the notion that he would be better protected from the virus in home confinement is speculation. Although the COVID-19 pandemic is undeniably grave and its impacts on every aspect of American life are unprecedented, there are no confirmed cases of the virus among the inmate population at USP Beaumont,[30] and the BOP has implemented a detailed COVID-19 response plan for federal inmates.[31] Thus, I cannot conclude that Johnson's health conditions, even in the face of the COVID-19 pandemic, provide extraordinary and compelling reasons for his early release.

A sentence reduction for Johnson is also independently unwarranted under the applicable § 3553(a) factors. The nature and circumstances of the offense of conviction were serious and dangerous. Johnson attempted to rob the Rainbow Gardens events center in Las Vegas by pointing a firearm at an employee and demanding that she give him her money and purse. The victim said that she didn't have her purse and that there was no money in the office, but Johnson continued to point the gun at her, told her she was lying, and demanded that she give him money. The victim reached into her pocket, pulled out some papers, and handed them to Johnson. He took what he thought was five dollars but ended up with just a receipt, and he ordered the victim

---

[29] U.S.S.G. 1B1.13, application note 1(A).

[30] *See* https:// www.bop.gov/coronavirus/ (last visited 5/12/2020).

[31] https://www.bop.gov/coronavirus/covid19_status.jsp (last visited 5/12/2020).

7

to get on the ground and to stay there or he'd shoot her. Johnson left and was apprehended two days later with the gun that he brandished during the attempted robbery.[32]

Johnson's lengthy sentence was also justified by his extensive and violent criminal history that included seven felony and seven misdemeanor convictions by age 24 and escalating from theft offenses to armed robberies with threats of death.[33] This robust criminal history, beginning at age 13, undermines Johnson's argument that his likelihood of recidivism is anything but high. Plus, Johnson's inability to comply with supervision conditions is well established by his numerous probation violations, revocations, and dishonorable discharges. In sum, Johnson's history and characteristics, the need to promote respect for the law and protect the public from Johnson's crimes, and all other § 3553(a) factors weigh heavily against shaving two years off his sentence. So even if I have the ability to consider Johnson's request for relief, I would deny it on its merits.

**Conclusion**

IT IS THEREFORE ORDERED that Defendant Harrison Johnson's Motion for Compassionate Release **[ECF Nos. 56, 59] is DENIED.**

IT IS FURTHER ORDERED that the Government's Motion to Seal defendant's medical records **[ECF No. 62] is GRANTED.** The Clerk of Court is directed to maintain the seal on ECF No. 63.

Dated: May 12, 2020

_____
U.S. District Judge Jennifer A. Dorsey

---

[32] ECF No. 28 at 4–5.
[33] PSR at 8–17.